IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 26, 2024 Session

## JANET SURA v. JIMMY'S LAST LAUGH, LLC

**Appeal from the Circuit Court for Davidson County**
**No. 22C414  Thomas W. Brothers, Judge**

_____

**No. M2023-01174-COA-R3-CV**

_____

Plaintiff sued the owner of a hotel after she fell in its lobby. The trial court granted summary judgment in favor of the defendant, concluding that the defendant did not owe a duty to the plaintiff. Because the trial court's order does not adequately explain how an expert report proffered by the plaintiff was treated in adjudicating the motion for summary judgment, we vacate and remand to the trial court for the entry of an order that addresses this issue.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Vacated and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which JOHN W. MCCLARTY and CARMA DENNIS MCGEE, JJ., joined.

Phillip S. Georges, Nashville, Tennessee, for the appellant, Janet Sura.

Andrew N. Grams and Tsveta Todorova-Kelly, Nashville, Tennessee, for the appellee, Jimmy's Last Laugh, LLC.

**MEMORANDUM OPINION[1]**

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

# I. FACTUAL AND PROCEDURAL HISTORY

On April 12, 2021, Plaintiff/Appellant Janet Sura ("Plaintiff") sustained injuries in a fall that occurred in a Nashville, Tennessee hotel owned and operated by Defendant/Appellee Jimmy's Last Laugh, LLC ("Defendant"). Plaintiff filed her first complaint against Defendant on March 4, 2022, in the Davidson County Circuit Court ("the trial court"). Plaintiff eventually filed a second amended complaint ("the complaint") on May 1, 2023.[2] Therein, Plaintiff alleged that she suffered injuries "when she tripped over a raised flower bed on the floor" and that Defendant "knew or should have known that there was a raised flower bed on the floor, and this constitutes a hazardous and unreasonably dangerous condition." The complaint further asserted that Defendant

> (a) knew or should have known that there was a raised flower bed between the lobby window and hotel entrance, constituting dangerous, hazardous, and unsafe conditions; (b) failed to properly correct and fix the raised flower bed between the lobby window and hotel entrance for said condition to remove the dangerous, hazardous, and unsafe condition; (c) failed to provide warning signs and/or notice regarding the condition of the lobby window and hotel entrance; (d) created said dangerous, hazardous, and unsafe condition and failed to address it and make it safe in a timely manner; (e) failed to properly and timely inspect the area where the Plaintiff was injured and address the dangerous, hazardous, and unsafe condition in a timely manner; [and] (f) failed to exercise due and reasonable care.

Plaintiff asked for a judgment in the amount of $1,500,000.00.

Defendant filed an answer to the complaint on June 1, 2023, denying the material allegations contained therein. Additionally, Defendant asserted that "Plaintiff failed to take reasonable steps for her own safety, failed to keep a proper lookout, and failed to see what was in plain sight. The condition of which Plaintiff complains was an open and obvious condition[.]" In addition, Defendant asserted the affirmative defense of comparative fault.

Defendant filed a motion for summary judgment on the same day, arguing that no dangerous condition existed on the premises, as the raised area that allegedly caused Plaintiff's fall was open and obvious. Thus, Defendant asserted that it owed no duty to Plaintiff. In support of its motion, Defendant filed a memorandum of law and a statement of undisputed material facts, along with excerpts from depositions, photographs of the area, and surveillance footage of Plaintiff's fall. According to the statement of undisputed facts:

1. Plaintiff visited Margaritaville Hotel Nashville on April 2, 2021, with her fiancé, Mr. Thomas Richer, and his family.

---

[2] The original complaint and first amended complaint are not included in the record on appeal.

2. After an eight-hour car ride, Plaintiff arrived at the Hotel.
3. Plaintiff went inside the Hotel to wait for her fiancé while he parked the car.
4. As she went inside, [Plaintiff] went toward a window to keep a lookout for her fiancé and his family.
5. Plaintiff . . . began walking forward when she "hit something, brushed something."
6. [Plaintiff] fell forward onto an outstretched arm and broke her hand.
7. Video of the fall shows Plaintiff walking to the landscape area and falling forward.
8. The landscape area is not flush with the lobby floor.
9. The floor was not wet, there were no broken tiles, nor was there any debris on the floor.
10. The floor by the landscape area is made of light-colored tiles leading to a brown, wooden, raised landscape area
11. No Hotel guest or employee caused Plaintiff to fall.
12. Plaintiff has a history of falling and a tendency to not lif[t] her legs when walking.
13. Plaintiff has a walker but refuses to use it.
14. Plaintiff does not know what caused her to fall.
15. Other than Plaintiff, there have been no other slip and fall claims or incidents similar to Plaintiff's fall in the landscape area before or after [Plaintiff] fell.

(Record citations omitted). In support of these facts, Defendant primarily cited the deposition testimony of Plaintiff and Mr. Richer.

Plaintiff responded in opposition to the motion for summary judgment on July 10, 2023. Therein, Plaintiff asserted, inter alia, that "[w]hile the Baseline Existence of the Planter was Obvious, it's Nature, Height, and Intended Function were not Sufficiently Obvious to Defendant's Invitees." As such, Plaintiff asserted that "the specific pattern of the planter could lead a reasonable observer to conclude it is not a step but a ramp, a change of material at the same elevation as the prior floor, or a step but one not as tall as it truly is."

In support of her claim of negligence, Plaintiff submitted the expert report from Human Factors engineer Ian Y. Noy, Ph.D. Dr. Noy first explained the circumstances of the fall as reported by Plaintiff and Mr. Richer, including that the injury occurred at dusk, when it "was getting dark outside." While walking toward the hotel window, Plaintiff "tripped over a raised platform that was located between the lobby area and the window."[3]

---

[3] Dr. Noy's report cited specific portions of the depositions in support of these facts, including Plaintiff's statement that it was "pretty close to dark" and that as a result, "you couldn't really see a lot."

Based on these conditions and a review of the photographs and surveillance footage, Dr. Noy opined that the raised platform

> constituted a foreseeable hazard because under ambient illumination from the perspective of a pedestrian walking to it from the front door, it appeared as merely a change in surface material (ceramic to wood), with the change in elevation being inconspicuous. The fall could have been prevented had the platform been designed to eliminate the hazard, as a first priority, or make the step architecturally conspicuous. The design should have followed the universally accepted hazard control hierarchy; namely, hazard elimination, guarding, and, as a last resort, proper use of warning signs to alert pedestrians to the presence of the platform step so that they could adjust their gait appropriately.

Plaintiff also responded to Defendant's statement of undisputed material facts, agreeing to most facts. Relevant to this appeal, Plaintiff responded to alleged undisputed fact 5 by noting that while Plaintiff could only state that she "hit something" the surveillance footage clearly "shows that [Plaintiff] specifically tripped on the plante[r]."[4] As to alleged undisputed fact 8, concerning whether the platform was flush with the lobby floor, Plaintiff responded as follows: "Agreed, though Plaintiff notes this fact is not obvious." In support, Plaintiff cited specific portions of Mr. Richer's deposition and Dr. Noy's report. With regard to alleged undisputed fact 10, regarding the coloring of the floor and platform, Plaintiff responded as follows: "Disagree as to the description of the tiles, as nighttime makes the tiles significantly darker," again citing Mr. Richer's deposition and the report from Dr. Noy. Plaintiff also disputed facts 13 and 15.

Defendant filed a reply on July 12, 2023. Therein, Defendant asserted that Plaintiff had not properly disputed any of the alleged undisputed facts. Specifically with regard to undisputed fact 10, Defendant argued that Plaintiff's response was "not a disagreement, but an addition to the fact listed." Moreover, Defendant asserted that Mr. Richer's testimony that "nighttime" would make the tiles darker was not proper evidence, as Plaintiff's fall did not occur "after dark," but at 4:00 or 5:00 pm in April.[5]

Defendant next argued that Dr. Noy's expert report could not be considered for purposes of summary judgment as it was not in the form of a deposition, affidavit, or declaration, and therefore constituted inadmissible hearsay. Defendant further asserted that Dr. Noy's findings were speculative and unreliable.

---

[4] Indeed, Defendant did not argue, for purposes of summary judgment, that Plaintiff did not trip over the raised platform, resulting in her fall.

[5] In support, Defendant cited Mr. Richer's testimony that they arrived at the hotel at "[p]robably 4 or 5 o'clock," as well as Plaintiff's deposition testimony that she was only in the hotel for a total of "15 minutes."

The trial court granted the motion for summary judgment by order of July 17, 2023. In reaching this result, the trial court first ruled that facts 1 through 12 and fact 14 were undisputed for purposes of the motion. The trial court did not, however, discuss Dr. Noy's expert report or resolve the question of its admissibility for purposes of summary judgment. Rather, after considering "the video, the images, and the undisputed facts," the trial court concluded that

> Plaintiff should not have walked where she did. It was not foreseeable that someone would walk into an area which was colored differently than the floor, elevated from the floor, and filled with plants. The foreseeability and gravity of harm do not outweigh the burden placed on Defendant to engage in conduct to prevent the harm.

The trial court further ruled that "[t]here was no unreasonable risk of harm with respect to the planter upon which Plaintiff fell" and that, as a result, "Defendant had no duty with respect to the planter upon which Plaintiff fell." Accordingly, the trial court dismissed Plaintiff's complaint with prejudice, and this appeal followed.

## II. ISSUE PRESENTED

Plaintiff presents a single issue for our review: whether the trial court erred in granting Defendant's motion for summary judgment.

## III. STANDARD OF REVIEW

We review the trial court's grant of summary judgment de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010)). As part of our review, we must "take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993) (citations omitted), *holding modified by Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008), *holding modified by Rye*, 477 S.W.3d 235. We similarly accept the evidence presented by the nonmoving party as true and resolve any doubts about the existence of a genuine issue of material fact in its favor. *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019) (citing *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 84 (Tenn. 2008)).

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary

judgment does not bear the burden of proof at trial, it "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." ***Rye***, 477 S.W.3d at 264. When a motion for summary judgment is made and supported as provided in Rule 56, the nonmoving party may not rest on the allegations or denials in its pleadings. ***Id.*** at 265. Instead, the nonmoving party must respond with specific facts showing that there is a genuine issue of material fact to be resolved at trial. ***Id.***

A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." ***Byrd***, 847 S.W.2d at 215. A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." ***Id.*** "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." ***Brooks Cotton Co. v. Williams***, 381 S.W.3d 414, 418–19 (Tenn. Ct. App. 2012) (alteration in original) (quoting ***Landry v. S. Cumberland Amoco***, No. E2009-01354-COA-R3-CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010)).

## IV. ANALYSIS

Plaintiff's action is based on the theory of premises liability. "Business proprietors are not insurers of their patrons' safety." ***Blair v. W. Town Mall***, 130 S.W.3d 761, 764 (Tenn. 2004). Business owners, however, must "exercise due care under all the circumstances." ***Parker v. Holiday Hosp. Franchising, Inc.***, 446 S.W.3d 341, 350 (Tenn. 2014) (citing ***Blair***, 130 S.W.3d at 764). "This general duty of due care imposes upon a property owner the responsibility of either removing, or warning against, any dangerous condition on the premises of which the property owner is actually aware or should be aware through the exercise of reasonable diligence." ***Id.*** (citing ***Eaton v. McLain***, 891 S.W.2d 587, 594 (Tenn. 1994)). A property owner does not have a duty, however, "to remove or warn against conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care." ***Rice v. Sabir***, 979 S.W.2d 305, 308–09 (Tenn.1998) (citations and internal quotation marks omitted). Rather, plaintiffs seeking to prove a premises liability claim must prove the elements of negligence—duty, breach of duty, injury, causation in fact, and proximate cause—as well as that the premises owner or operator either caused or created the dangerous condition or had notice of the condition prior to the accident. ***Parker***, 446 S.W.3d at 350 (citing ***Blair***, 130 S.W.3d at 764).

In this case, the trial court ruled that Defendant had negated the essential element of Plaintiff's premises liability claim concerning duty. "Duty . . . is the legal obligation a defendant owes to a plaintiff to conform to the reasonable person standard of care in order to protect against unreasonable risks of harm." ***Dobson v. State***, 23 S.W.3d 324, 330 (Tenn. Ct. App. 1999). As this Court has explained, "[t]he duty of a premises owner is a

duty of reasonable care under all circumstances." *Id.* (citations and internal quotation marks omitted).

Defendant essentially argues that it did not owe a duty to Plaintiff because the risk posed by the raised platform was open and obvious. Traditionally, the fact that a risk was open and obvious was a bar to recovery. *See Dobson*, 23 S.W.3d at 330. In 1998, however, the Tennessee Supreme Court abrogated the open and obvious doctrine, holding that "the traditional open and obvious rule eliminating a landowner's duty to one injured as a result of an open and obvious danger" was no longer viable following the adoption of comparative fault. *Coln v. City of Savannah*, 966 S.W.2d 34, 36–37 (Tenn. 1998), *overruled on other grounds by Cross v. City of Memphis*, 20 S.W.3d 642 (Tenn. 2000).

Instead, Tennessee law now provides that "an open and obvious danger does not automatically result in a finding of no duty and therefore no landowner liability." *Id.* at 37. As such, a finding that a danger is open and obvious "does not, ipso facto, relieve a defendant of a duty of care." *Id.* at 43. Rather, in *Coln*, the Tennessee Supreme Court held that "the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm." *Id.* "Applying this analysis, if the foreseeability and gravity of harm posed by the defendant's conduct, even if 'open and obvious,' outweigh the burden upon the defendant to engage in alternative conduct, the defendant has a duty to act with reasonable care and the comparative fault principles apply[.]" *Id.* at 37.

Thus, in order to determine "whether a risk to a plaintiff is unreasonable so as to give rise to a duty to act with due care, courts must employ a balancing approach" by considering the following factors,

> the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

*Shaw v. Metro. Gov't of Nashville & Davidson Cnty.*, 596 S.W.3d 726, 736 (Tenn. Ct. App. 2019) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). "A risk is deemed unreasonable if 'the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm.'" *Id.* (quoting *McCall*, 913 S.W.2d at 153). "For the purpose of determining whether a duty exists, the courts' consideration of foreseeability is limited to assessing whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it." *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 367 (Tenn. 2008). In other words, "courts are

simply ascertaining whether the defendant was obligated to be vigilant of a certain sort of harm to the plaintiff." *Id.* (citation, brackets, and quotation marks omitted). Whether a defendant owed the plaintiff a duty of care is a question of law which we review de novo. *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005).

Keeping these principles in mind, we turn to the arguments raised by Plaintiff in this appeal. As an initial matter, Plaintiff asserts that material facts were in dispute and that the trial court erred in weighing the evidence to reach its conclusion. In particular, Plaintiff asserts that Dr. Noy's report created a dispute of material fact that prevented summary judgment on the issue of duty. In particular, Plaintiff points to Dr. Noy's conclusion that the platform presented a foreseeable risk, in apparent contrast to the trial court's conclusion that Plaintiff's fall was not foreseeable. Given this evidence, Plaintiff contends that the trial court erred in weighing the evidence to reach its conclusion that a duty was not owed. *See Brooks Cotton Co.*, 381 S.W.3d at 428 (holding that "summary judgment proceedings [are not] substitutes for trials of disputed factual issues").

In response, Defendant asserts that the report does not create a dispute of material fact or preclude summary judgment because it is inadmissible hearsay. As previously discussed, in response to a properly supported motion for summary judgment, the nonmoving party must put forth evidence, in the form of "affidavits or one of the other means provided in Tennessee Rule 56," showing a genuine disputed issue for trial. *Rye*, 477 S.W.3d at 265. Rule 56 specifically states that a party opposing a motion for summary judgment may do so "by affidavits or as otherwise provided in this rule[.]" Tenn. R. Civ. P. 56.06.[6] Elsewhere, Rule 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," entitle the moving party to judgment as a matter of law. Tenn. R. Civ. P. 56.04.

Importantly, evidence cited in connection with a motion for summary judgment must be admissible *in substance*. *Lexon Ins. Co. v. Windhaven Shores, Inc.*, 601 S.W.3d 332, 339 (Tenn. Ct. App. 2019) (citing *Shipley v. Williams*, 350 S.W.3d 527, 564–65 & n.12 (Tenn. 2011) (Koch, J., concurring in part and dissenting in part)). The evidence need not be in an admissible *form* at the summary judgment stage, however. *Id.* (citing *Byrd*, 847 S.W.2d at 215–16). Instead,

> [t]o be admissible, evidence at the summary judgment stage must satisfy the requirements of the Tennessee Rules of Evidence, as well as any other requirements controlling the admissibility of particular types of evidence. Thus, evidence that would be *substantively* inadmissible at trial would

---

[6] This rule further states that expert affidavits are governed by Rule 703 of the Tennessee Rules of Evidence. *Id.* Rule 703 contains substantive, rather that procedural, requirements applicable to expert opinions. *See* Tenn. R. Evid. 703.

likewise be inadmissible at the summary judgment stage.

*Id.* at 340 (emphasis added) (quoting **Shipley**, 350 S.W.3d at 565 (Koch, J., concurring in part and dissenting in part)). So where "evidence can be reduced to an admissible form at trial[,]" the fact that it is in an inadmissible form at the summary judgment stage is not fatal to its consideration. **Farber v. Nucsafe, Inc.**, No. E2022-00428-COA-R3-CV, 2023 WL 2519411, at *7 (Tenn. Ct. App. Mar. 15, 2023) (citing **Byrd**, 847 S.W.2d at 215–16).

In its reply to Plaintiff's opposition to summary judgment, Defendant raised two objections to Dr. Noy's report.[7] First, that it was speculative and unreliable. And second, that it was unsworn hearsay. The first objection clearly goes to the substance of Dr. Noy's opinions. The second objection, however, arguably goes only to the form of the evidence as it was presented at the summary judgment stage. And on appeal, Defendant confines its argument only to the latter objection.

Still, Defendant does cite some legal authority from outside our jurisdiction that an unsworn expert report of this type is not sufficient to create a dispute of material fact for purposes of summary judgment. *See* **Smith v. Prudential Ins. Co. of Am.**, 864 F. Supp. 2d 654, 659 (M.D. Tenn. 2012) ("[U]nsworn expert reports constitute hearsay and may not be considered at the summary judgment stage." (citing **Sigler v. Am. Honda Motor Co.**, 532 F.3d 469, 479–80 (6th Cir. 2008)). Based on a 2010 amendment to the federal rules of evidence, however, the Fifth Circuit Court of Appeals has held that a trial court erred in refusing to consider an report at the summary judgment stage solely because it was not sworn without determining whether considering the fact that the witness would testify to those opinions at trial and whether the opinions would, if testified to at trial, be admissible. **Lee v. Offshore Logistical & Transp., L.L.C.**, 859 F.3d 353, 354–55 (5th Cir. 2017), *as revised* (July 5, 2017); *see also* **Malee v. Anthony & Frank Ditomaso, Inc.**, No. 1:16CV490, 2018 WL 1805402, at *2 (N.D. Ohio Apr. 16, 2018) (stating that "[t]he **Sigler** case was decided before Rule 56 was amended in 2010, which omitted much of the admissibility requirements found in the previous iteration of Rule 56" but holding that it was the nonmoving party's burden to explain how the expert's conclusions contained in the hearsay report would be offered at trial).

Of course, the 2010 amendment to federal Rule 56 provides for a broad slate of evidence that may be considered for purposes of summary judgment in federal courts, including "depositions, *documents*, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or *other materials*[.]" Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). As previously discussed, our summary judgment rule does not contain the general categories of "documents" or "other materials." *See generally* Tenn. R. Civ.

---

[7] Plaintiff's argument that Defendant waived its objections to Dr. Noy's report by failing to raise them in the trial court therefore lacks merit.

P. 54.04. Moreover, while federal judicial decisions "interpreting rules similar to our own are persuasive authority for purposes of construing the Tennessee rule," they "are non-binding even when the state and federal rules are identical." ***Harris v. Chern***, 33 S.W.3d 741, 745 n. 2 (Tenn. 2000).

The trial court, however, did not specifically rule on whether Dr. Noy's report could be considered under Rules 56.04 and 56.06. Indeed, the trial court's written order makes no mention of Dr. Noy's report of any kind.[8] the trial court merely stated that Defendant's undisputed facts 1 through 12 and 14 would be the trial court's "formal findings with respect" to Defendant's motion. Plaintiff, however, cited Dr. Noy's report in her response to two of these facts, one of which she expressly "[d]isagree[d]" with. Without some mention of Dr. Noy's expert report, particularly in connection with alleged undisputed fact 10, we are left to guess as to how the trial court reached its ultimate decision. Two principles are relevant in this situation.

First, we note that the admission or exclusion of evidence is generally left to the trial court's discretion. ***In re Markus E.***, 671 S.W.3d 437, 473 (Tenn. 2023). "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." ***Harmon v. Hickman Cmty. Healthcare Servs., Inc.***, 594 S.W.3d 297, 305 (Tenn. 2020) (quoting ***Lee Med., Inc. v. Beecher***, 312 S.W.3d 515, 524 (Tenn. 2010)). However, when the trial court fails to explain its discretionary decision, we often "cannot determine whether the trial court applied an incorrect legal standard or relied on reasoning that caused an injustice because we do not know what legal standard the court applied, or what reasoning it employed." ***Gooding v. Gooding***, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015) (quoting ***In re Noah J.***, No. W2014-01778-COA-R3-JV, 2015 WL 1332665, at *5 (Tenn. Ct. App. Mar. 23, 2015)). In that situation, we are unable to afford the trial court the appropriate deference and may independently review the issue. Or we may remand for the trial court to make the necessary findings in support of its decision. ***Id.***

It is also imperative that the trial court state the basis for its ruling on summary judgment. Rule 56.04 of the Tennessee Rules of Civil Procedure expressly provides that "[t]he trial court shall state the legal grounds upon which the court denies or grants the motion, which shall be included in the order reflecting the court's ruling." Based on this

---

[8] The only mention of an expert by the trial court is a statement in the background law section of the order that a plaintiff "cannot rely merely on the conclusions of experts to establish a duty, as the determination of whether a duty exists is within the province of the courts[,]" citing ***Shaw***. 596 S.W.3d at 736. Still, neither party asserts that this passing reference to ***Shaw*** is sufficient to infer that the trial court considered and rejected Dr. Noy's report in determining that no material factual disputes existed. Indeed, in its brief, Defendant characterizes the trial court's action as giving neither "consideration" nor "weight" to the report in its summary judgment decision, which Defendant asserts was correct due to its inadmissibility.

rule, the Tennessee Supreme Court has held that trial courts must ensure that their summary judgment ruling is both "adequately explained and [] the product of the trial court's independent judgment." **Smith v. UHS of Lakeside, Inc.**, 439 S.W.3d 303, 314 (Tenn. 2014). When the trial court's order does not meet these requirements, our ability to review the trial court's ruling is hampered. **Id.** at 313–14 (citing **Church v. Perales**, 39 S.W.3d 149, 157 (Tenn. Ct. App. 2000)). In that situation, we also have the choice to either independently review the record so long as the deficient order does not "significantly hamper" our review or to remand the case to the trial court for an order that complies with Rule 56.04. **Id.** at 314.

In this case, the issue of whether Dr. Noy's report can be considered for purposes of summary judgment is highly relevant to the threshold question in every summary judgment case—whether the facts are undisputed. Certainly, Defendant has made a compelling argument that the report should not be considered, as it is hearsay. But the law is clear that objections to only the form of evidence are not fatal at summary judgment, if the evidence can be reduced to admissible form. *See* **Farber**, 2023 WL 2519411, at *7. In the trial court, Defendant also objected to the report on a substantive basis. And Defendant suggested that the report should not be considered because Plaintiff did not properly dispute its statement of undisputed material facts or file her own statement of undisputed material facts citing Dr. Noy's report. Finally, even if the report can be considered for purposes of summary judgment, the ultimate question of whether the report creates genuine disputes of material fact as to Defendant's duty remains. Clearly, these issues must be resolved in order to determine whether Defendant is entitled to summary judgment. And to the extent that the trial court has broad discretion over evidentiary issues, they should be left to the trial court's sound discretion. *See* **In re Markus E.**, 671 S.W.3d at 473.

In sum, the trial court's order leaves us to guess as to whether the trial court considered or excluded Dr. Noy's report. If the report was excluded, the trial court's order does not explain how or why it reached that decision. If the report was, in fact, considered by the trial court, the trial court's ruling does not provide an adequate explanation of how the report factored into its conclusion that no material facts were in dispute and no duty was owed to Plaintiff. Given the trial court's broad discretion in evidentiary issues as well as the lack of adequate explanation for its summary judgment ruling, we conclude that the proper remedy is to vacate the grant of summary judgment and remand for the entry of an order better explaining the trial court's decision. **UHS of Lakeside**, 439 S.W.3d at 314; **Gooding**, 477 S.W.3d at 782.

## V. Conclusion

The judgment of the Davidson County Circuit Court is vacated, and this cause is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellee Jimmy's Last Laugh, LLC, for which execution may issue if necessary.

_s/ J. Steven Stafford_  
J. STEVEN STAFFORD, JUDGE